INDEX OF EXHIBITS

| Ex. No. | DESCRIPTION |
|---------|-------------|
| A. | Pleadings from State Court |
| B. | Notice of Removal Filed in State Court |
| C. | Demand |

# "EXHIBIT A"

1  Timothy G. Tonkin (#020709)
   Steven J. Jones (#031438)
2  **PHILLIPS LAW GROUP, P.C.**
   3101 N. Central Avenue, Suite 1500
3  Phoenix, Arizona 85012
   Telephone:   (602) 258-8900
4  Facsimile:   (602) 279-9155
   E-Mail:  timt@phillipslaw.com
5  E-Mail:  stevenj@phillipslaw.com
   E-Mail:  minute_entries@phillipslaw.com

6  *Attorney for Plaintiffs*

7

                IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
8
                     IN AND FOR THE COUNTY OF MARICOPA
9
   SUSAN SIMINGTON, Individually,          Case No.: CV 2020-009859
10
                Plaintiff,                 **SUMMONS**
11
           vs.                             Tort – Motor Vehicle
12
   SILVER SPUR MHP, L.L.C., a foreign limited
13 liability company; JOHN DOES 1-5; JANE
   DOES 1-5; BLACK CORPORATIONS 1-5;
14 and WHITE PARTNERSHIPS 1-5,

15              Defendants.

16       **STATE OF ARIZONA TO THE DEFENDANTS:**

17                   **SILVER SPUR MHP, L.L.C.**

18       **YOU ARE HEREBY SUMMONED** and required to appear and defend, within the
   time applicable, in this action in this Court. If served within Arizona, you shall appear and
19 defend within twenty (20) days after the service of the Summons and Complaint upon you,
   exclusive of the day of service. If served outside of the State of Arizona – whether by direct
20 service, or by publication – you shall appear and defend within thirty (30) days after the
   service of the Summons and Complaint upon you is complete, exclusive of the day of service.
21 Service by publication is complete thirty (30) days after the date of first publication. Direct
   service is complete when made. Service upon the Arizona Motor Vehicle Superintendent is
22 complete thirty (30) days after filing the Affidavit of Compliance and return receipt or
   Officer's Return. Where process is served upon the Arizona Director of Insurance as an
23 insurer's attorney to receive service of legal process against it in this State, the insurer shall not
   be required to appear, answer or otherwise plead until the expiration of forty (40) days after the
24 date of service upon the Director. A.R.S. §§ 20-222, 28-1027.

25

If you would like legal advice from a lawyer,
Contact the Lawyer Referral Service at
602-257-4434
or
www.maricopalawyers.org
Sponsored by the
Maricopa County Bar Association

                                       1

**YOU ARE HEREBY NOTIFIED** that in case of your failure to appear and defend within the time applicable, judgment by default may be rendered against you for the relief demanded in the Complaint.

**YOU ARE CAUTIONED** that in order to appear and defend, you must file an answer or other proper response in writing with the Clerk of the Court, accompanied by the necessary filing fee, within the time required, and you are required to serve a copy of any answer or other response upon the plaintiff's attorney.

The name and address of the plaintiff's attorney is:

Timothy G. Tonkin, Esq.
Steven J. Jones, Esq.
**PHILLIPS LAW GROUP, P.C.**
3101 N. Central Avenue, Suite 1500
Phoenix, Arizona 85012

**ADA Notification**

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least three (3) working days in advance of a scheduled court proceeding.

**Interpreter Notification**

Requests for an interpreter for persons with limited English proficiency must be made to the office of the judge or commissioner assigned to the case by the parties at least ten (10) judicial days in advance of a scheduled court proceeding.

SIGNED AND SEALED: _____

JEFF FINE
Clerk of the Superior Court

COPY

AUG 1 7 2020

_____
Deputy Clerk

CLERK OF THE SUPERIOR COURT
S. OLMOS
DEPUTY CLERK

2

Timothy G. Tonkin (#020709)
Steven J. Jones (#031438)
**PHILLIPS LAW GROUP, P.C.**
3101 N. Central Avenue, Suite 1500
Phoenix, Arizona 85012
Tel: (602) 258-8900
Fax: (602) 279-9155
Email: stevenj@phillipslaw.com
Email: minute_entries@phillipslaw.com

COPY

AUG 17 2020

CLERK OF THE SUPERIOR COURT
S. OLMOS
DEPUTY CLERK

Attorneys for Plaintiff

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

CV 2020-00985

| | |
|---|---|
| SUSAN SIMINGTON, Individually,<br><br>Plaintiff,<br><br>vs.<br><br>SILVER SPUR MHP, L.L.C., a foreign limited liability company; JOHN DOES 1-5; JANE DOES 1-5; BLACK CORPORATIONS 1-5; and WHITE PARTNERSHIPS 1-5,<br><br>Defendants. | Case No.:   CV 2020-009859<br><br>**COMPLAINT**<br><br>Tort – Non-Motor Vehicle |

For her complaint, Susan Simington (hereinafter "Plaintiff"), alleges as follows:

1.     Plaintiff is, and was at all times material herein, a resident of the County of Maricopa, State of Arizona.

2.     Defendant, SILVER SPUR MHP, L.L.C, a foreign limited liability company (hereinafter "Defendant"), is a Utah based company authorized to do business and conducting business within the County of Maricopa, State of Arizona. At all times herein, Defendant owned certain real property "The Silver Spur Ranch RV Park," an approximately 20-acre facility located on the north side of Main Street, east of Ellsworth Road in Mesa, Arizona.

1

3.     Defendants sued herein as John Does 1-5 are now and were at all relevant times residents of the State of Arizona.  Further, said Defendants are owners, partners, agents, servants, managers, and/or employees of Defendants SILVER SPUR MHP, L.L.C (hereinafter referred to as "Defendants" unless otherwise indicated), and as such are liable for the actions of said Defendant(s) such that the employer Defendant is vicariously liable for the acts and omissions of John Does 1-5.  Further the Defendants sued herein as Jane Does 1-5 are the wives of Defendants John Does 1-5 and all acts complained of herein were for and on behalf of the respective Doe marital communities.  Plaintiff will request leave of the Court to insert the true names of these unknown Defendants as their identities are learned in the course of discovery.

4.     The Defendants sued herein as Black Corporations 1-5, and/or White Partnerships 1-5, is/are the owner(s), agent(s), dba(s), servant(s), wholly owned subsidiary(ies), managing partner(s) and/or corporate parent(s) of Defendants SILVER SPUR MHP, L.L.C and as such, is/are liable for the actions of said Defendants.  All said fictitious Defendants are believed to be authorized to do business in the State of Arizona.

5.     Upon information and belief, all fictitious Defendants were residents of the County of Maricopa, State of Arizona; and/or were organized and existing under the laws of Arizona and doing business in the State of Arizona; and/or were foreign corporations, businesses, etc., qualified to do business within the State of Arizona, and actually doing business therein on the date of the accident alleged herein.

6.     All acts and events alleged hereafter occurred within the County of Maricopa, State of Arizona.

7.     The minimum jurisdictional amount established for filing this action has been satisfied.  This Court has jurisdiction and venue is proper.

## ALLEGATIONS COMMON TO ALL COUNTS

2

1       8.    Defendants SILVER SPUR MHP, L.L.C own certain real property "The Silver

2   Spur Ranch RV Park" located on the north side of Main Street, east of Ellsworth Road in

3   Mesa, Arizona (hereinafter "the subject property")

4       9.    Upon information and belief, as of December 17, 2018, Defendant SILVER

5   SPUR MHP, L.L.C was operating an RV Lot "The Silver Spur Ranch RV Park" at the subject

6   property.

7       10.    The Silver Spur Ranch RV Park is an approximate 20-acre facility on the north

8   side of Main Street, east of Ellsworth Road in Mesa, Arizona. A moderately-sized wash bisects

9   the facility beginning in the northeast corner and flowing diagonally to the west/southwest

10  where it exits the property. The streets in the RV Park all extend south to north and three of

11  them cross this wash.

12

13   

14

15

16

17

18

19

20

21      11.    The subject bridge over the wash was, and is, used by invitees of Defendant

22  SILVER SPUR MHP, L.L.C.

23      12.    At all relevant times, there existed a drop-off from the west bridge curb. At all

24  relevant times, there were no handrails or edge protection to prevent individuals from falling

25  off.

3

1      13.    At all relevant times, there was a chain attached to poles on the eastside of the

2  bridge however, on the west side of the bridge there is no chain.

3      14.    At all relevant times, the absence of guardrail barrier made the subject bridge

4  hazardous.

5      15.    At all relevant times, a guardrail barrier was required for protection of vehicular

6  and pedestrian use across the bridge/elevated surfaced at the wash crossing.

7      16.    At all relevant times, none of the other barriers for roadways that cross the wash

8  in the development comply with relevant standards, either for height or strength.

9      17.    At all relevant times, the subject bridge constituted a dangerous condition created

10  and maintained by the Defendants, or one of which the Defendants possessed actual or

11  constructive notice.

12                         **COUNT ONE: NEGLIGENCE**

13      18.    Plaintiff re-alleges and incorporates by reference Paragraphs 1-17 above as if

14  fully set forth herein.

15      19.    On December 17, 2018,  Plaintiff was a business invitee at the Silver Spur Ranch

16  RV Park located on the north side of Main Street, east of Ellsworth Road in Mesa, Arizona.

17      20.    On December 17, 2018, Plaintiff was traversing the above-referenced roadway

18  over the subject wash. Plaintiff fell and sustained serious injuries while walking back to her

19  RV lot in the subject premises. At approximately 10:00 p.m., Plaintiff was walking northbound

20  across a bridge on the west side, there are uneven surfaces with no rails. As she was crossing

21  the bridge a she tripped and fell into the wash adjacent to the bridge, an approximate distance

22  of six feet. Plaintiff suffered serious and permanent injuries which necessitated surgical

23  intervention.

24      21.    Defendants and as to all of them owed a non-delegable duty of care to Plaintiff,

25  to conduct reasonable inspection of the premises for hazards, to warn Plaintiff of any such

1  hazards, to operate in a way unlikely to cause hazards, and to remedy any such hazards,

2  whether known or that it discovers.

3      22.    Defendants and as to all of them owed a duty of care to Plaintiff to avoid

4  maintaining dangerous conditions on the property.

5      23.    Defendants and as to all of them breached their duty of care to Plaintiff.

6      24.    As a result of Defendants' negligence, Plaintiff sustained injuries.

7  **COUNT TWO: PREMISES LIABILITY**

8      25.    Plaintiff re-alleges and incorporates by reference Paragraphs 1-24 above as if

9  fully set forth herein.

10      26.    On December 17, 2018,  , Plaintiff was a business invitee at the Silver Spur

11  Ranch RV Park located on the north side of Main Street, east of Ellsworth Road in Mesa,

12  Arizona.

13      27.    Defendants and as to all of them owed a duty of due care to its business invitees

14  and, specifically to Plaintiff, to conduct reasonable inspection of the premises for hazards,

15  including lighting conditions to warn Plaintiff of any such hazards, to operate in a way unlikely

16  to cause hazards, and to remedy any such hazards, whether known or that it discovers.

17      28.    Defendants breached their duty of due care by failing to adequately warn

18  Plaintiff of the dangerous conditions then existing on its premises.

19      29.    Defendants knew or should have known that unreasonably dangerous conditions

20  existed on its premises, therefore providing Defendants ample notice to take action to remedy

21  the unreasonably dangerous conditions.

22      30.    As a result of Defendants' failure to adequately warn of the dangerous

23  conditions, failure to remedy the dangerous conditions and/or creating the dangerous

24  conditions, Plaintiff sustained severe and permanent injuries.

25  **DAMAGES**

5

31.   Plaintiff re-alleges and incorporates paragraphs 1-30 above as if fully set forth herein.

32.   As a direct and proximate result of the negligent, reckless, and careless conduct of Defendants, Plaintiff suffered severe injuries which caused her pain, suffering, distress, mental and emotional anguish and anxiety, and a general decrease in her quality and enjoyment of life, all in an amount to be proven at trial.

33.   As a further direct and proximate result of the negligent, reckless, and careless conduct of Defendants, Plaintiff has incurred expenses for medical care, and may incur expenses for future medical care, all in an amount to be proven at trial.

34.   As a direct and proximate result of the negligent, reckless, and careless conduct of Defendants, Plaintiff has or may have suffered lost earnings and may suffer future lost earnings and/or diminished earning capacity, all in an amount to be proven at trial.

35.   As a further direct and proximate result of the negligent, reckless, and careless conduct of Defendants, Plaintiff has incurred expenses for driving to doctor appointments, and is entitled to compensation for her mileage driven to doctor appointments, all in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendants, and each other defendant named herein, jointly and severally, as follows:

(a)   For Plaintiff's general and special damages;

(b)   For Plaintiff's expenses incurred for past medical care and treatment of Plaintiff's injuries for future medical treatment expenses;

(c)   For Plaintiff's past and future lost wages and loss of earning capacity;

(d)   For Plaintiff's expenses driving to doctor appointments;

(e)   For Plaintiff's costs incurred herein;

1    (f)For interest at the highest legal rate on all damages and costs from the time

2    incurred on the date of such judgment, whichever is sooner, until paid;

3    and

4    (g)    For such other and further relief as the Court deems just and proper.

6    **STATEMENT OF TIER VALUE**

7    Consistent with the factors and characteristics identified in the lawsuit above, this
8    matter is an automobile tort, and pursuant to Rule 26.2(b) of the Arizona Rules of Civil
9    Procedure, the damages sought in this case qualify it as a Tier 2 case.

11   **DATED** this 17th  day of August, 2019.

14                   PHILLIPS LAW GROUP, P.C.

15   By:

16                   Timothy G. Tonkin, Esq.
                     Steven J. Jones, Esq.
17                   *Attorneys for Plaintiff*

7

1  Timothy G. Tonkin, Esq. (#020709)
   Steven J. Jones, Esq. (#031438)
2  **PHILLIPS LAW GROUP, P.C.**
   3101 N. Central Ave., Suite 1500
3  Phoenix, Arizona 85012
   Telephone:   (602) 258-8900 ext. 100
4  Facsimile:   (602) 279-9155
   E-Mail: Timt@phillipslaw.com
5  E-Mail: Stevenj@phillipslaw.com
   minute_entries@phillipslaw.com

6  *Attorneys for Plaintiffs*

7

8              **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9                **IN AND FOR THE COUNTY OF MARICOPA**

   SUSAN SIMINGTON, Individually,          Case No.: CV2020-009859
10
              Plaintiff,                    **CERTIFICATE OF COMPULSORY**
11                                          **ARBITRATION**
        vs.
12                                          Tort –Motor Vehicle
   SILVER SPUR MHP, L.L.C. a foreign limited
13 liability company; JOHN DOES 1-5; JANE
   DOES 1-5; BLACK CORPORATIONS 1-5;
14 and WHITE PARTNERSHIPS 1-5,

15            Defendants.

16
          The undersigned certifies that he knows the dollar limits and any other limitations set
17
   forth by the local rules of practice for the applicable superior court, and further certifies that
18
   this case Is Not subject to compulsory arbitration, as provided by Rules 72 through 76 of the
19
   Arizona Rules of Civil Procedure.
20
          **DATED** this 17ᵗʰ day of August, 2020.
21
                             **PHILLIPS LAW GROUP, P.C.**
22

23                   By _____
                        Timothy G. Tonkin, Esq.
24                      Steven J. Jones, Esq.
                        *Attorneys for Plaintiff*
25

                                    1

COPY

AUG 17 2020

CLERK OF THE SUPERIOR COURT
S. OLMOS
DEPUTY CLERK

| Attorney or Party without Attorney:<br>TIMOTHY G TONKIN ESQ. (#020709)<br>PHILLIPS LAW GROUP<br>3101 N Central Avenue Suite 1500<br>Phoenix, AZ 85012<br>*Telephone No:* (602) 258-8900 | For Court Use Only<br>SUPERIOR COURT<br>RECEIVED CCB #1<br>DOCUMENT DEPOSITORY<br>2020 AUG 20  AM 11: 46<br>FILED<br>BY G. CRUZ, DEP |
|---|---|
| *Attorney For:* Plaintiff | *Ref. No. or File No.:* SIMINGTON SUSAN 56896 |

*Insert name of Court, and Judicial District and Branch Court:*
MARICOPA COUNTY SUPERIOR COURT

*Plaintiff:* SUSAN SIMINGTON, individually; ET AL.
*Defendant:* SILVER SPUR MHP, LLC, a foreign limited liability company; ET AL.

| AFFIDAVIT OF SERVICE | Hearing Date: | Time: | Dept/Div: | Case Number:<br>CV2020-009859 |
|---|---|---|---|---|

1. *At the time of service I was at least 21 years of age and not a party to this action.*

2. I served copies of the
SUMMONS; COMPLAINT; CERTIFICATE OF COMPULSORY ARBITRATION

3. a. *Party served:* SILVER SPUR MHP, LLC
   b. *Person served:* Ronald Meyer - Statutory Agent

4. *Address where the party was served:* 5727 N 7th St # 407, Phoenix, AZ 85014

5. *I served the party:*
   a. **by substituted service.** On: Wed, Aug 19 2020 at: 10:40 AM by leaving the copies with or in the presence of:
   Ronald Meyer - Statutory Agent , Caucasian , Male , Age: 65 , Hair: White , Height: 6'2" , Weight: 230

   (a) ( Person of suitable age and discretion. Informed him or her of the general nature of the papers.

   Service: $18.08, Mileage: $24.00, Affidavit: $10.00, Wait: $0.00, Fees Advanced: $0.00, Total: $52.08

I Declare under penalty of perjury under the laws of the State of Arizona that the foregoing is true and correct.

6. *Person Executing:*
   a. Michael Cryan 5491, Maricopa County;
   b. **FIRST LEGAL**
   3737 North 7th. Street Suite 209
   PHOENIX, AZ 85014
   c. (602) 248-9700

_____08/19/2020_____    _____mgly_____
      *(Date)*                    *(Signature)*

7. *STATE OF ARIZONA, COUNTY OF MARICOPA Subscribed and sworn to (or affirmed) before me on this* 19 *day of* August, 2020 *by* Michael Cryan (5491, Maricopa County) *proved to me on the basis of satisfactory evidence to be the person who appeared before me.*



_____
      *(Notary Signature)*

BRYAN BLAIR<br>NOTARY PUBLIC - ARIZONA<br>MARICOPA COUNTY<br>COMMISSION # 568486<br>MY COMMISSION EXPIRES<br>APRIL 29, 2023



AFFIDAVIT OF SERVICE

4796139
(10411846)

# "EXHIBIT B"

1  Ryan J. McCarthy, Bar #020571
   Alexander R. LaCroix, Bar #030166
2  JONES, SKELTON & HOCHULI, P.L.C.
   40 North Central Avenue, Suite 2700
3  Phoenix, Arizona  85004
   Telephone:  (602) 263-1789
4  Fax:  (602) 200-7878
   rmccarthy@jshfirm.com
5  alacroix@jshfirm.com
   minuteentries@jshfirm.com
6
   Attorneys for Defendant Silver Spur MHP,
7  LLC

8
              **SUPERIOR COURT OF THE STATE OF ARIZONA**
9
                     **COUNTY OF MARICOPA**
10

11 | SUSAN SIMINGTON, Individually, | NO. CV2020-009859 |
12 | Plaintiff, | **NOTICE OF FILING NOTICE OF REMOVAL** |
13 | v. | (Assigned to the Honorable Sherry Stephens) |
14 | SILVER SPUR MHP, L.L.C., a foreign limited liability company; JOHN DOES 1-5; JANE DOES 1-5; BLACK CORPORATIONS 1-5; and WHITE PARTNERSHIPS 1-5, | |
15 | | |
16 | Defendants. | |
17

18         Defendant Silver Spur MHP, L.L.C., by and through undersigned counsel,

19 pursuant to 28 U.S.C. §§§ 1332, 1441, and 1446, notify this Court that Defendant filed a Notice

20 of Removal of this action to the United States District Court for the District of Arizona.  A copy

21 of the Notice of Removal (exclusive of exhibits) is attached as **Exhibit A**.

22

23

24 ///

25

8755644.1

DATED this 14th day of September 2020.

JONES, SKELTON & HOCHULI, P.L.C.

By  */s/ Alexander R. LaCroix*
Ryan J. McCarthy
Alexander R. LaCroix
40 North Central Avenue, Suite 2700
Phoenix, Arizona  85004
Attorneys for Defendant Silver Spur MHP, LLC

ORIGINAL of the foregoing electronically filed
this 14th day of September 2020.

COPY of the foregoing mailed/e-mailed
this 14th day of September 2020, to:

Timothy G. Tonkin
Steven Jones
Phillips Law Group
3101 N. Central Avenue, Suite 1500
Phoenix, Arizona  85012
stevenj@phillipslaw.com
minute_entries@phillipslaw.com
Attorneys for Plaintiff

*/s/ Gail Hardin*

# "EXHIBIT C"

TIMOTHY G. TONKIN ~ °
"TREY" A.R. DAYES III §+
JOSE A. MONTAÑO + *
STEVEN J. JONES ° °
JONATHAN JAMIESON *
M. MONTANA THOMPSON * §
SOPHIA AUGERI
NASSER ABUJBARAH
ROBERT J. ROSS



PHILLIPS LAW GROUP, P.C.
3101 N. CENTRAL AVENUE • SUITE 1500 • PHOENIX, AZ 85012
TELEPHONE: (800) 706-3000
WWW.PHILLIPSLAW.COM
HABLAMOS ESPAÑOL

JEFFREY PHILLIPS
ROBERT ARENTZ +†
LOWELL FINSON §§
RUTHANN JAMES
YELENA SHIMONOVA
JESSICA A. ZINK
RICHARD S. FRANKOWSKI + ++
KEVIN VALDEZ * *
PHILLIP E. LAPOINTE

~ BOARD CERTIFIED SPECIALIST IN INJURY AND WRONGFUL DEATH LITIGATION • ° AMERICAN BOARD OF TRIAL ADVOCATES MEMBER • • SE HABLA ESPAÑOL • • OF COUNSEL
* LICENSED ALSO IN CALIFORNIA • § LICENSED ALSO IN UTAH • °° LICENSED ALSO IN NEW YORK • ° ° LICENSED ALSO IN MARYLAND & LOUISIANA
+ • LICENSED IN FLORIDA, ALABAMA & TEXAS • §§ LICENSED IN ARIZONA, CALIFORNIA & OHIO

May 27, 2020

## TIMED DEMAND REQUEST
## RESPONSE DUE: JUNE 8, 2020

Suzy Schaberg
Auto Owners Insurance
1860 S Power Rd
PO Box 10098
Mesa, AZ 85216
Fax: (480) 830-8794

**MESA CLAIMS**

**JUN 01 2020**

**AUTO-OWNERS INS**

Re: Our Client          ====  Susan Simington
    Your Insured        ====  Silver Spur Ranch RV Park
    Type of Claim       ====  Liability
    Date of Loss        ====  12/17/2018
    Claim Number        ====  300-0008353-2019
    **Settlement Request** ====  **$3,000,000.00**

Dear Ms. Schaberg:

As you are aware, this office represents Susan Simington with regard to the above-referenced incident. We are submitting this letter to present the facts of this claim in an effort to settle this claim without the necessity of litigation. The statements in this letter are provided solely in the context of settlement negotiations and are not intended as admissions nor are they to be used for any other purpose.

This letter is submitted pursuant to Rule 408 of the Arizona Rules of Evidence and is for settlement negotiations only

### FACTUAL SUMMARY

On December 17, 2018, at approximately 10:00 p.m., our client, Susan Simington was injured falling from a bridge over a wash near lot #19 of the Silver Spur Ranch RV. Susan was walking back to her RV lot after checking the mail. Susan was walking northbound across a bridge on the west side, there are uneven surfaces with no rails. As she was crossing the bridge a she tripped and fell into the wash adjacent to the bridge, an approximate distance of six feet.

The Silver Spur Ranch RV Park is an approximate 20-acre facility on the north side of Main Street, east of Ellsworth Road in Mesa, Arizona. A moderately-sized wash bisects the facility beginning in the northeast corner and flowing diagonally to the west/southwest where it exits the property. The streets in the RV Park all extend south to north and three of them cross this wash.

The west crossing is where Susan fell while walking from the community mailbox building (located approximately 200 feet south of the bridge) back to her RV home at Unit 19 (located immediately to the northwest of the bridge).

Suzy Schaberg
Auto Owners
Re: Susan Simington
Page 2

Where it crosses the wash, the subject bridge is approximately 21-22 feet wide and consists of a concrete slab with 6 inch concrete curbs at its edges, over three 4 foot in diameter concrete pipes (culverts). The wash bottom is approximately 12 feet wide at this location and the concrete portion of the bridge is approximately 35 feet long. A 22 foot long chain is connected to two pipes that are embedded in the **east** curb (which is assumed to have been a barrier for pedestrians.) An identical pipe is embedded in the **west** bridge curb, obviously the remnant of similar chain anchors. However, **there were no chains or other barriers on the west bridge curb on the date of the incident**.

Photographs of the bridge were taken close to the date in question are attached hereto and labeled Exhibit A. Notably, these photographs make clear there were absolutely no warnings or preventative measures of the drop where Susan fell.

On or about December 31, 2018, Andrew Walker of Walker Investigations visited the scene for the purpose of taking measurements and photographs. A copy of Mr. Walker's letter summarizing his findings, along with photographs taken by Mr. Walker are attached hereto. During his inspection, Mr. Walker noted and photographed the bridge and indicated there was a chain attached to poles on the eastside of the bridge however, on the west side of the bridge there is no chain.

 

## LIABILITY

The liability of Silver Spur Ranch RV Park and/or its officers, agents or employees to Mrs. Simington is based on negligence. Mrs. Simington alleges that Silver Spur Ranch RV Park's negligent actions/omissions caused this accident to occur. Silver Spur Ranch RV Park has a duty to design, construct, control, inspect and maintain its roadways in a manner that is reasonably safe for use by invitees such as Mrs. Simington. Silver Spur Ranch RV Park further has a duty to design, construct, inspect, maintain and/or improve its facility in conformance with generally accepted engineering or design standards, and all applicable codes and regulations. Silver Spur Ranch RV Park had a duty to provide reasonably adequate warning as to any unreasonably dangerous conditions – such as the drop-off involved herein - which would allow the public to take suitable precautions. Silver Spur Ranch RV Park further owes a duty to its business invitees to inspect the premises for hazards and remedy hazards that are known to it or that it discovery and/or provide adequate warnings of same.

Silver Spur Ranch RV Park was negligent in failing to design, construct, inspect and/or maintain the area in question in a manner that is reasonably safe, and in failing to provide reasonably adequate warning as to the unreasonably dangerous condition that was present. As a direct and proximate result of Silver Spur Ranch RV Park's negligent acts and omissions, Mrs. Simington sustained injuries.

Suzy Schaberg
Auto Owners
Re: Susan Simington
Page 3

## Expert Report of Gervasio & Associates, Inc.

Fred Nelson, P.E., Vice President of Gervasio and Associates, conducted an inspection of the Silver Spur Ranch RV Park property, and authored an expert report detailing the hazardous and dangerous condition of the subject area where the incident occurred.

In reaching his conclusions, Mr. Nelson conducted an inspection of the subject property, interviewed Susan and her husband, reviewed applicable building codes, ordinances and statutes, called and spoke to individuals in Development Services at the City of Mesa, and reviewed applicable standards, research materials and evidentiary materials pertinent to the fall.

During his investigation, Mr. Nelson found that the Silver Spur Ranch RV parked was annexed into the City of Mesa on November 20, 2006, via Ordinance 4618. Exhibit D at 6, Appendices E & F. As a condition of annexation, the Ranch was required to comply "with all city codes and regulations," including the Fire Code. Mr. Nelson notes that Fire Code AASHTO HB-17 provides design criteria for safe roadways, including barriers at bridges and elevated surfaces. Mr. Nelson opined that your insured had a duty to comply with these requirements, including the requirement that the bridge have a guardrail.

By way of his report, Mr. Nelson summarizes the various code requirements and concludes that your insured's bridge lacked the required railing to protect vehicles and pedestrians from falling.

Following his investigation, Mr. Nelson reached the following conclusions:

1.) The absence of guardrail barrier makes the subject bridge hazardous in daytime use when it is visible; highly hazardous at night when visibility is poorer; and highly dangerous at night for pedestrians blinded by on-coming traffic like Susan Simington experienced.

2.) An AASHTO guardrail barrier was required for protection of vehicular and pedestrian use across the bridge/elevated surfaced at the wash crossing

3.) In addition to the requirement to protect users of the bridge from its inception, a guardrail was specifically required when the RV Park was annexed because the City's annexation requirements required compliance with all Mesa codes, including the Fire Code, which via AASHTO, requires barriers on bridges.

4.) The AASHTO "Standard Specifications for Bridge Construction" in effect when the RV Park was annexed required: (1) guardrails for vehicles be 2 ft. 8 in. high above the roadway and be designed for vehicular impact (2) guardrails for combined vehicular/pedestrian use be 3 ft. 6 in. above the roadway surface and also be designed for pedestrian impact at the highest portion; and (3) guardrails for combined vehicular/bicycle also be designed for bicycle impact at 4 ft. 6 in. above the roadway surface.

5.) None of the other barriers for roadways that cross the wash in the development comply with relevant AASHTO standards, either for height or strength.

Based on the above, it cannot be disputed that the Silver Spur Ranch RV Park failed to maintain safe walking surfaces so as to prevent falling hazards. It also cannot be disputed that the Silver Spur Ranch RV Park failed to act reasonably to correct hazardous conditions at the premises. Accordingly, the Silver Spur Ranch RV Park is liable on a negligence theory.

## DAMAGES

Enclosed are the following medical bills, reports and other relevant data, which have been incurred as a result of this incident:

Suzy Schaberg
Auto Owners
Re: Susan Simington
Page 4

A.    Report dated January 1, 2019 authored by Walker Investigations and Photographs of the Incident Site

B.    Photographs Depicting Our Client's Bodily Injuries

C.    Photographs Depicting Our Client's Surgical Scarring to Left Wrist and Left Knee

D.    Expert Report Authored by Fred Nelson, P.E., Gervasio & Associates, dated April 13, 2020, with

Appendices A – K

1. Appendix A: Aerial Photographs

2. Appendix B: Interview Notes with Susan Simington and Aerial Photographs Showing where she walked/fell

3. Appendix C: G&A Sketches and Field Notes

4. Appendix D: Report by Walker Investigations

5. Appendix E: City of Mesa Ordinance No. 4610

6. Appendix F: City of Mesa Case 207-03 for Annexation of Silver Spur Ranch RV Park into City

7. Appendix G: Documents Related to the Adoption of the International Code Family between 2003 and 2008

8. Appendix H: Fire Code Editions (Excerpts)

9. Appendix J: "Standard Specifications for Highway Bridges" (Excerpts)

10. Appendix K: Selected G&A Photographs

E.    Expert Independent Medical Evaluation Report authored by Amon T. Ferry, M.D., dated May 4, 2020

F.    Assessment of Vocational Potential and Economic Damages Report authored by David Orlowski, Ph.D., DMIN, dated May 22, 2020

**MEDICAL SPECIALS**

Suzy Schaberg
Auto Owners
Re: Susan Simington
Page 5

| | | |
|---|---|---|
| F. | AMR<br>12/17/2018 | $1,207.33 |
| G. | Banner Desert Medical Center<br>12/17/18 - 12/27/2018 | $304,908.80 |
| H. | Progressive Medical Associates<br>12/17/2018 | $4,835.00 |
| I. | Southwest Diagnostic Imaging<br>12/17/2018 - 12/18/2018 | $2,303.00 |
| J. | Advanced Surgical Associates<br>12/18/2018 - 12/27/2018 | $708.75 |
| K. | The Core Institute<br>12/18/2018 - 03/27/2019 | $6,810.07 |
| L. | Anesthesia Resource, LTD<br>12/18/2018 | $3,500.00 |
| M. | Apache Junction Medical Center<br>12/27/2018 -1/21/2019 | $16,836.19 |
| N. | Allied Internal Medicine<br>12/28/2018 - 1/19/2019 | $2,330.00 |
| O. | SMI Imaging<br>3/13/2019 | $774.36 |
| P. | Otsego Medical Group<br>4/30/2019 - 9/18/2019 | $612.00 |

**Total Medical Specials Incurred**                                      **$344,825.50**

**Economic Damages Per David Orlowski, Ph.D.**

| | |
|---|---|
| Past and Future Wage and Benefit Loss | **$152,668.00** |
| Future Medical Care Cost | **$1,187,071.00** |
| Replacement Costs for Household Services | **$244,529 to $293,435** |
| Exertional Exercise Disability Value | **$78,897.00** |

**Total Specials Incurred**                                      **$2,007,990.50 to**
                                                                  **$2,056,896.50**

Susan Simington sustained the following injuries due to this incident:

1. **Fracture of left distal radius – comminuted and displaced**
2. **Closed fracture of left tibial plateau**
3. **Fracture of right superior pubic ramus**

Suzy Schaberg
Auto Owners
Re: Susan Simington
Page 6

4. Right sacral impaction
5. Lateral compression type pubic ring injury
6. Leukocytosis
7. Bilateral pneumonia
8. Left radial/ulna fracture
9. Left tibia plateau fracture
10. Left proximal fibula fracture
11. Right superior pubic rami fracture
12. Inferior pubic rami fracture
13. Right sacral fracture
14. Fracture of shaft of left radius
15. Fracture of shaft of left ulna
16. Muscle weakness
17. Fracture of sacrum
18. Fracture of superior rim of right pubis
19. Fracture of right ischium
20. Displaced bicondylar fracture of left tibia
21. Fracture of shaft of left fibula
22. Sprain of the left ankle
23. Left thumb abrasion
24. Right tibia abrasion
25. Left lower lobe infiltrate on Chest X-ray – Infectious or Inflammatory Process
26. Permanent Scarring/Disfigurement – Left Wrist
27. Permanent Scarring/Disfigurement – Left Knee
28. Left distal radius ORIF of interarticular fracture
29. Left lateral tibial plateau ORIF
30. Near Syncope
31. Altered Gait Secondary to Left Knee Injury
32. Permanent Aggravation of Left Ankle Degenerative Joint Disease
33. 5% Permanent Impairment of the left lower extremity for the tibial plateau fracture
34. 2% Permanent Impairment of the left lower extremity for ankle DJD
35. 7% Total Permanent Impairment of the left lower extremity [equals 3% whole person impairment]
36. 3% Permanent Impairment of the left upper extremity [equals 2% whole person impairment]
37. 2% Whole Person Permanent Impairment for pelvic ring fractures
38. 7% Whole Person Impairment for All Injuries Sustained

## BODILY INJURY DAMAGES
### Medical Special Damages and Physical Injuries

Immediately following the incident, Susan Simington was treated on the scene by AMR ambulance. First responders found Susan sitting in a chair in an irrigation ditch. It was noted that Susan had fallen into the ditch from about six feet high. EMS noted obvious left wrist deformity and angulation of the left leg distal to the knee. Susan was given medication for pain and nausea. EMS splinted her wrist and stabilized her knee. Susan was placed on a backboard and in a C-Collar and transported to the nearest emergency room.

Susan was transported to Banner Desert Trauma Center for emergency care. She was seen in the emergency room by Jeffrey Salomone, M.D., a trauma surgeon. Susan provided a history of the incident, explaining that she had fallen from a bridge, approximately six feet high. She complained of wrist pain, leg pain, back pain and hip pain. Susan was unable to ambulate. A physical examination revealed a deformity at the left wrist with swelling of the left knee and limited flexion. There were abrasions on her left thumb and right tibia. A chest x-ray revealed left lower lobe infiltrate. A left knee x-ray

Suzy Schaberg
Auto Owners
Re: Susan Simington
Page 7

demonstrated irregular and sclerotic and lucent regions noted in the left tibial plateau centrally extending laterally, possible fracture. A left wrist x-ray demonstrated a comminuted distal left radius fracture with dorsal angulation. Following an examination and review of the imaging, Susan was diagnosed with left arm fracture, left leg fracture, right pelvis fracture, near syncope and pneumonia. She was admitted into the hospital for further evaluation, pain control and treatment.

Michael Terence Talerico, M.D., performed an orthopedic surgical consultation on December 18, 2018. Following a consultation, Dr. Talerico performed a tibial plateau open reduction internal fixation as well as a left wrist open reduction internal fixation. Dr. Talerico performed the surgeries on December 18, 2020. The post-operative diagnoses included:

- Left distal radius fracture, closed interarticular with three or more parts
- Left lateral split depression-type tibial plateau fracture, closed
- Right sacral impaction, right superior and inferior pubic rami fractures consistent with lateral compression type pubic ring injury
- Status post ground level fall

Susan was transferred to a rehabilitation center upon her release from the hospital. She was also provided with prescriptions of acetaminophen, aspirin, atenolol, docusate, methocarbamol, and oxycodone.

An x-ray of the left knee dated December 18, 2018 demonstrated post-surgical changes after Susan's left tibial plateau ORIF.

An x-ray of the left wrist dated December 18, 2018 demonstrated post-surgical changes after Susan's left distal radius ORIF.

An x-ray of the pelvis dated December 18, 2018 demonstrated nondisplaced fractures of the right superior and inferior pubic rami.

A CT-Scan of the left knee with 3-D Reconstruction dated December 18, 2018 demonstrated a complex comminuted proximal tibia fracture involving the lateral tibial plateau with inferior displacement of the articular surface of the lateral tibial plateau. The fracture involves the inter-tibial spine region, as well as the anterior and posterior cortex of the proximal tibia. The displacement of the lateral tibial plateau is approximately 8 millimeters inferiorly. The imaging also revealed a comminuted fracture of the proximal fibula.

On December 27, 2018 Susan was transferred from Banner Desert Medical Center to Apache Junction Health Center Rehab to assist in his recovery for the following diagnosed injuries (1) unspecified fracture of shaft of left radius, subsequent encounter for closed fracture with routine healing, (2) unspecified fracture of shaft of left ulna, subsequent encounter for closed fracture with routine healing, (3) pneumonia, (4) muscle weakness, (5) unspecified fracture of sacrum, subsequent encounter for fracture with routine healing, (6) fracture of superior rim of right pubis, subsequent encounter fracture with routine healing, (7) unspecified fracture of right ischium, subsequent encounter for fracture with routine healing, (8) displaced bicondylar fracture of left tibia, subsequent encounter for closed fracture with routine healing, and (9) unspecified fracture of shaft of left fibula, subsequent encounter for close fracture with routine healing.

While cared for at Apache Junction Health Center Rehabilitation, Susan underwent comprehensive care to improve her daily self-care functions including walking. Susan underwent extensive physical therapy and occupational therapy training to regain strength in her hip, legs and arms. Susan was provided close monitoring with 24 hour rehabilitative nursing during his time at Apache Junction Health Center Rehabilitation. Upon discharge Susan was moderately independent, ambulating household distances with one person's physical assistance, bed mobility and transfers with limited assistance, and independent with activities of daily living, self-care skills. She was released in the care of her husband January 21, 2019.

Suzy Schaberg
Auto Owners
Re: Susan Simington
Page 8

Susan followed up with Dr. Talerico on March 13, 2019. She was three months postop and was still ambulating with the use of one crutch. She reported ongoing pain and limited range of motion in the left knee and left wrist.

On April 30, 2019, Susan presented to Otsego Medical Center for follow up care for ongoing ankle pain. Following a full examination, Susan was diagnosed with a sprain of the left ankle. Susan continues to wear a left ankle brace to assist with pain. She was instructed on a home exercise routine, recommended to continue with over the counter pain medicine as needed. She was released from care September 18, 2019.

On April 30, 2019, Susan presented to her primary care doctor, Nathan Mann, D.O. It was noted she had a fall in December with surgical treatment of left tibial plateau and wrist fractures. She reported residual wrist weakness and clicking and tightness in the knee. A referral for physical therapy was recommended.

## IME WITH AMON T. FERRY, M.D.

On May 4, 2020, Susan underwent an IME with Amon Ferry, M.D. She reported ongoing pain in her left knee, left wrist, left ankle and right low back pain. On physical examination, Susan exhibited limited range of motion of the left wrist and left knee.

Following an examination and review of the medical records, Dr. Ferry opined Susan sustained the following injuries as a result of her fall: (1) interarticluar distal radius fracture on the left; (2) interarticluar tibial plateau fracture on the left; (3) nondisplaced superior and inferior pubic rami factures; (4) right sided sacral ala fracture; and (5) sprain left ankle.

Dr. Ferry opined that the treatment Susan received as a result of the subject accident was reasonable and necessary. Dr. Ferry also opined that the charges for said treatment were reasonable.

Dr. Ferry opined that Susan sustained a permanent aggravation of her left ankle Degenerative Joint Disease as a result of the fall.

Dr. Ferry opined that Susan would experience future pain and discomfort due to her injuries, and that the injuries necessitated future evaluation and treatment. Susan will not improve from where she is right now, and will suffer ongoing pain due to the limited range of motion in both the left wrist and left knee. She will likely also have residual pain in the left ankle. Dr. Ferry explains that due to the interarticluar nature of her left wrist and left knee fractures, Susan is likely to develop post-traumatic degenerative joint disease in these joints. If that occurs then she may need future surgical care, including a fusion at her left wrist, knee replacement of the left knee, and fusion of the left ankle.

Dr. Ferry opined Susan's injuries are permanent. Using the AMA Guides to Permanent Impairment, Sixth Edition, Dr. Ferry opined Susan suffered the following permanent impairment ratings:

- 5% permanent impairment of the left lower extremity for the tibial plateau fracture;
- 2% permanent impairment of the left lower extremity for ankle DJD
- 7% total permanent impairment of the left lower extremity [equals 3% whole person impairment]
- 3% permanent impairment of the left upper extremity [equals 2% whole person impairment]
- 2% whole person permanent impairment for pelvic ring fractures
- 7% Whole Person Impairment for All Injuries Sustained

Dr. Ferry opined that Susan sustained a permanent aggravation of her left ankle Degenerative Joint Disease as a result of the fall.

## ASSESSMENT OF VOCATIONAL POTENTIAL AND ECONOMIC
## DAMAGES REPORT, DATED MAY 22, 2020

Suzy Schaberg
Auto Owners
Re: Susan Simington
Page 9

Enclosed please find the Assessment of Vocational Potential and Economic Damages report of David Orlowski, Ph.D., DMIN, dated May 22, 2020. Dr. Orlowski performed an independent vocational economic assessment projecting the impact of Mrs. Simington's injuries on her loss of earning capacity, diminished capacity for performing household services, future life care medical costs, and exertional exercise disability valuation.

Dr. Orlowski opined that Mrs. Simington's economic damages, reduced to present value, are as follows:

| | |
|---|---|
| Future wage and benefit loss | **$152,668.00** |
| Future medical expenses | **$1,187,071.00** |
| Replacement cost of household services | **$244,529.00 to $293,435.00** |
| External activities disability value | **$78,897.00** |
| TOTAL: | ***$1,663,165.00 to $1,712,071.00*** |

#### i.    Future Medical

As set forth above, the total medical expenses to date are $344,825.50, this does not include the future medical expenses as Mrs. Simington continues to receive medical treatment and will require a future medical treatment and supportive care for her injuries.  With the best of recoveries, Mrs. Simington will now require physician follow up appointments, including future total knee replacement, ankle surgery within twenty years, injections for pain relief, ongoing bloodwork annually to follow up with anti-inflammatory usage, residual x-rays (every 2 to 3 years), MRI's (every 5 years), 12-15 sessions of physical therapy per year, H-Wave Tens unit, annual pain medication refills, and additional medical equipment, including but not limited to a wheel chair, medical scooter, etc. Mrs. Simington's future medical care costs total, at present value are **$1,187,071.** *See* Vocational Assessment, Life care Plan and Economic Damages report of David Orlowski, pages 36-40.

#### ii.    Loss of Earning Capacity

Prior to the collision, Mrs. Simington worked as a Jewelry-Silver Craft Specialist for 30 years with her husband, in their business, Jeff Simington Jewelry. Based on her pre-injury vocational success, Dr. Orlowski opined it is probable that she would have continued her position with her joint business working full-time, either fashioning jewelry for craft shows or promoting the product in them.

Sadly, Mrs. Simington sustained injuries causing great pain, limitations, and greatly restricting her functional capacity. Ms. Simington reported that she is no longer able to perform the work of fabricating jewelry due to her left wrist injuries, as well as the lifting and carrying duties of loading and unloading for the craft shows each day. She cannot stand for any length of time in order to engage with the customers like she did. She stated, "We worked it.  We designed and fabricated our own jewelry, purchased the gemstones for it, and promoted and sold it at craft shows across the country.  For the last twenty years, I did the silver smithing right next to my husband, where we worked half our day fabricating the jewelry. Just about every weekend, we were at a show from Thursday to Sunday. After the fall, I could no longer handle the silver smithing.  My loss of left wrist strength, and the pain associated with holding the tools, was just too much.  I tried a number of times, but I was no longer accurate, and I wasted the silver too much. Obviously, the fabrication of the pieces requires focused strength and agility, something I suddenly lost. It's been heartbreaking." *See* Vocational Assessment, Life care Plan and Economic Damages report of David Orlowski, pages 29-35.

Suzy Schaberg
Auto Owners
Re: Susan Simington
Page 10

Dr. David Orlowski performed an independent vocational economic assessment to determine Mrs. Simington's loss of earning capacity, decreased ability for performing household services, employability, future life care medical costs and exertional exercise disability valuation. Dr. Orlowski's full report is attached for your review.

Mrs. Simington's net wage and benefit loss, at present value, totals **$152,668.** *See* Vocational Assessment, Life care Plan and Economic Damages report of David Orlowski, page 35, attachment B.

### iii.    Replacement Cost for Household Services

In addition to her inability to work as she did before the crash, Mrs. Simington will no longer be able to perform most of her household services at her pre-accident level, including, but not limited to, household maintenance, cleaning, cooking, laundry, and shopping. The replacement value for the household services that she will no longer be able to do, or only has a limited capacity to do, is **$244,529 to $293,435.** *See* Vocational Assessment, Life care Plan and Economic Damages report of David Orlowski, page 42, attachment D.

### iv.    Exertional Activities Disability Value

Mrs. Simington has also been severely compromised in her ability to engage in external activities. Prior to this collision Mrs. Simington enjoyed walking/hiking (2-3x/wk for 1 hr+), bicycling (2-3x/wk for 45 min), motorcycle riding (2x/wk for 2-3 hrs), fishing (24x/yr for 4 to 6 hrs), etc. The inability to do these types of activities has a monetary value of **$78,897.00.** *See* Vocational Assessment, Life care Plan and Economic Damages report of David Orlowski pages 43-45, attachment E.

## CONCLUSION

As a result of the bodily injuries brought about by the negligence of your insured, Susan Simington had to endure numerous uncomfortable therapy sessions. Susan Simington has been adversely affected by this accident physically, emotionally and financially. Pursuant to Arizona law, Susan Simington is entitled to just compensation in an amount that fairly and reasonably compensates her for:

1.  The nature, extent and duration of her injury;
2.  The pain, discomfort, suffering, disability, disfigurement and anxiety already experienced and to be experienced in the future as a result of the injury;
3.  The incurred expenses of necessary medical care, treatment and services rendered and reasonably probable to be incurred in the future;
4.  Lost earnings to date and any decrease in earning, power or capacity in the future; and
5.  Loss of love, care affection, companionship and other pleasures of the family and/or marital relationship.
6.  Loss of enjoyment of life, that is, the participation in life's activities to the quality and extent normally enjoyed before the injury.

Susan Simington has incurred past and future special damages totaling more than **$2,056,000.00**, not including mileage expenses. If Auto Owners was to offer **$3,000,000.00** to resolve Susan Simington's claims for past and future, known and unknown medical expenses, injuries, pain, suffering, emotional and physical distress, and general damages, we would recommend it. If you require additional information to properly evaluate this matter, please request this additional information within 7 days of the date of this letter. If you fail to make this request timely, any requested extension of the overall demand deadline may not be granted. As you are aware, this is a timed demand. After you have had an opportunity to evaluate these materials, please contact **Ruthann** at extension **670** at your earliest opportunity. If you wish to send your offer in writing, it may be faxed to (602) 900-0101.

Please be advised that we do not have authority for the settlement figure presented; however, we would feel comfortable recommending it to our client. We look forward to working with you in an effort to reach an amicable resolution and

Suzy Schaberg
Auto Owners
Re: Susan Simington
Page 11

request your response on or before **June 8, 2020** at 5:00 p.m.  Thank you for your time and attention to the foregoing.
Should you have any questions or require additional information, please do not hesitate to contact our office.

Very truly yours,

**PHILLIPS LAW GROUP**

Steven Jones, Attorney
For the Firm

SJ/

Enclosures